UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ELIJAH LEE and IMMANUEL MAJERSKA<br><br>Defendants. | Criminal Action No. 22-cr-174 (JXN)<br><br>**OPINION** |

**NEALS**, District Judge

This matter comes before the Court on the motions to suppress filed by Defendants Immanuel Majerska ("Majerska") and Elijah Lee ("Lee") (collectively, "Defendants"). (ECF Nos. 78, 81.) Plaintiff, the United States of America (the "Government"), opposed the motions (ECF No. 83), and Defendant Majerska replied in further support (ECF No. 84). The Court has carefully considered the parties' submissions and heard oral argument on July 26, 2024. For the reasons set forth below, Defendants' motions to suppress are **DENIED**.

**I.   BACKGROUND**[1]

Since 2019, the Drug Enforcement Administration ("DEA") has been investigating a website, tdpmolds.com (the "Website"), that advertises and distributes equipment used for manufacturing narcotic pills, including counterfeited prescription pills. Defendants made and received purchases of pill-making equipment from the Website. Law enforcement believes that a Chinese national (the "Website Operator") operates the Website out of China and controls the

---

[1] The facts here are from the Government's opposition brief (ECF No. 83), which relies on the DEA reports and search warrant affidavits. As noted by the Government, the Court may rely on these materials to review a suppression motion. *See United States v. Raddatz*, 447 U.S. 667, 679 (1980) ("At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial." (citing *United States v. Matlock*, 415 U.S. 164, 173 (1974)). For the sake of facility, the majority of the facts can be found in the search warrant affidavits.

customer service email account for the Website.

The Website Operator's WhatsApp contact information is listed on the Website. Legal process obtained by law enforcement shows that Lee was in contact with the Website Operator via WhatsApp approximately 200 times between November 2019, and January 2020. In addition, throughout 2019 and 2020, postal records show that Lee received approximately a dozen packages from China at his residence in Union, New Jersey (the "Union Premises"). Furthermore, law enforcement learned that Lee made approximately nineteen purchases of kilogram-quantity amounts of different bonding agents[2] between May 2019, and December 2019, which were shipped to the Union Premises from an entity called LFA Firmapress.

On or about January 18, 2020, law enforcement conducted a trash pull of a residence owned by Lee in Irvington, New Jersey (the "Irvington Premises") and found a respirator mask, latex gloves, and dry Swiffer pads with red residue—all items typically used in the manufacture of narcotics pills. In addition, law enforcement recovered a Western Union receipt for a transfer of approximately $1,000 from Lee to an individual in China.

On or about January 20, 2020, an undercover law enforcement officer (the "UC") received a shipment of punches and dies[3] from the Website. The UC's package was shipped from an address in California that is known to transport shipments from the Website (the "Reshipper").

On or about January 21, 2020, law enforcement delivered a package addressed to Lee at the Union Premises (the "Lee Package"). The Lee Package came from the Reshipper and had the same size and shape as the package received by the UC. That same day, law enforcement observed

---

[2] A bonding agent is used to bond a narcotic mixture together in a pill.

[3] Punches and dies are the tools for tableting machines that are used in tablet production. Before manufacturing any tablet of a particular size and shape, its die is created. A punch, on the other hand, is used for creating impressions on the tablet surface.

Majerska make two trips to the Irvington Premises, with each visit lasting approximately two hours.

On January 28, 2020, law enforcement officers appeared before the Honorable Joseph A. Dickson, United States Magistrate Judge (ret.) ("Judge Dickson") and obtained search warrants to search the Union Premises (the "Union Premises Search Warrant") and the Irvington Premises, (the "Irvington Premises Search Warrant"). The warrants authorized officers to search for evidence of narcotics manufacturing and production.

On or about January 30, 2020, law enforcement officers observed Lee and Majerska exit the Irvington Premises with a weighted plastic bag (the "Bag"), which Majerska placed into a vehicle. Thereafter, Majerska entered the vehicle and left the Irvington Premises area. Believing that Majerska was transporting narcotics, law enforcement stopped Majerska's vehicle (the "Vehicle Stop"). Upon approaching Majerska's vehicle, officers detected a strong odor of burnt marijuana emanating from Majerska's person and the vehicle. Officers removed Majerska from the vehicle and observed the Bag partially open. Inside the Bag, in plain view, officers observed numerous clear plastic bags containing multi-colored pills of suspected 3,4-Methylenedioxy methamphetamine ("MDMA" or "ecstasy"). Officers placed Majerska under arrest.

While executing the Irvington Premises Search Warrant, officers encountered Lee and recovered from the basement a tableting machine, various punches indicative of use to manufacture controlled substances, various color binding agents (which matched the pills recovered from the Bag in Majerska's car during the "Vehicle Stop"), and approximately 813.8 grams of powder methamphetamine. In addition, law enforcement recovered a .40 caliber Taurus handgun, model PT, bearing serial number SCN01177 in Majerska's bedroom.

While executing the Union Premises Search Warrant, law enforcement recovered a black

.38 Colt revolver bearing serial number 150762, five .38 caliber bullets, a black .38 Colt revolver bearing serial number PI0408, four .38 caliber bullets, and a box containing seven .38 caliber bullets.

On March 3, 2022, a federal grand jury returned a two-count indictment charging Lee and Majerska with (1) conspiracy to distribute and to possess with intent to distribute over 500 grams of methamphetamine, contrary to Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A) and in violation of Title 21, United States Code Section 846 (Count One), and (2) possession with intent to distribute 500 grams or more of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A) (Count Two).

On September 29, 2023, Majerska filed a motion to suppress. (ECF No. 78.) On October 15, 2023, Lee also filed a motion to suppress. (ECF No. 81.) The Government filed opposition on November 17, 2023. (ECF No. 83.) Majerska filed a reply to the Government's opposition on April 17, 2024 (ECF No. 84.) The Court heard oral argument on July 26, 2024.

## II. DISCUSSION

Defendant Majerska moves to suppress the evidence recovered during the Vehicle Stop on the basis that law enforcement lacked the requisite articulable suspicion of criminality to seize and detain him. (*See generally* ECF No. 78.) Majerska further contends that an evidentiary hearing is required to resolve factual issues related to his motion to suppress. (*Id*. at 5-7.) Defendant Lee seeks suppression of the evidence seized pursuant to the Irvington Premises Search Warrant,[4] contending that the search warrant affidavit was based on insufficient and misleading information

---

[4] The Court notes that it is unclear whether Lee is contesting the fruits of both search warrants or just the fruits of the Irvington Premises Search Warrant. Nevertheless, both search warrants are based on the same affidavit, therefore the Court's analysis applies to both.

4

and did not establish probable cause. (*See generally* ECF No. 81.)

The Government argues that law enforcement had reasonable suspicion to believe Majerska was transporting narcotics when they conducted the Vehicle Stop, and upon approaching Majerska's car, officers had probable cause to search the car for marijuana. (ECF No. 83 at 4-6.) As to Lee, the Government argues that officers relied in good faith on the Magistrate Judge's finding of probable cause to search the Irvington Premises. (*Id*. at 6-8.) Lastly, the Government contends that Lee does not meet the high standard required for a *Franks* hearing,[5] and an evidentiary hearing is not warranted in either motion. (*Id*. at 8-13.)

The Court addresses the parties' arguments below.

A.  **The Vehicle Stop Of Majerska**

Majerska moves to suppress all physical evidence stemming from the Vehicle Stop that occurred on January 30, 2020. He also requests an evidentiary hearing to resolve factual issues related to his motion to suppress. For the reasons that follow, the Court will deny Majerska's request for an evidentiary hearing and deny his motion to suppress.

   1.  An Evidentiary Hearing is not Warranted

Because Majerska has not presented any disputed issues of material fact that affect the outcome of his motion to suppress, the Court will deny his motion for an evidentiary hearing.

Federal Rule of Criminal Procedure 12(c)(1) states that a District Court "may" schedule an evidentiary hearing on a pretrial motion. Fed. R. Crim. P. 12(c)(1). In the context of a motion to suppress, the procedure for a defendant who seeks an evidentiary hearing is to "(1) state a colorable

---

[5] In *Franks v. Delaware*, the Supreme Court concluded that the Fourth Amendment requires a hearing, "where a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit," and where "the allegedly false statement is necessary to the finding of probable cause." 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

legal claim, (2) identify facts material to that claim, (3) show why the facts are disputed, and then (4) request a hearing to resolve that dispute." *United States v. Hines*, 628 F.3d 101, 106 (3d Cir. 2010). A motion to suppress only requires a hearing if it is "sufficiently specific, non-conjectural, and detailed to enable the court to conclude" that the defendant has raised material facts related to his constitutional claim. *Id*. at 105; *see also United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996).

The question for the Court is whether the information discloses a sufficient basis to conclude that there is a dispute over real factual issues which require the Court's determination. Here, Majerska has not presented any material facts in dispute to warrant an evidentiary hearing. Majerska's certification does not controvert the information contained in the police reports. Without evidence to controvert the officers' observations, which provided an objective basis for the officers to make the Vehicle Stop, Majerska has failed to show the existence of a material dispute as to the Vehicle Stop that would necessitate a hearing.

Accordingly, Majerska's request for an evidentiary hearing on the motion to suppress is denied.

    2. <u>Majerska's Motion to Suppress</u>

The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. Const. Amend. IV. When law enforcement executes a seizure without a warrant grounded in probable cause, the government must prove, by a preponderance of the evidence, that "each individual act constituting a search or seizure under the Fourth Amendment was reasonable." *United States v. Ritter*, 416 F.3d 256, 261 (3d Cir. 2005). If officers obtained evidence because of a Fourth Amendment violation that evidence must be suppressed. *United States v. Brown*, 448 F.3d 239, 244 (3d Cir. 2006).

*Terry* stops refer to a category of brief, investigatory stops undertaken by the government when an officer has a reasonable, articulable suspicion that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 30 (1968); *United States v. Delfin-Colina*, 464 F.3d 392, 396 (3d Cir. 2006). The lawfulness of a *Terry* stop under the Fourth Amendment requires a dual analysis: first, the court "examine[s] 'whether the officer's action was justified at its inception'—that is, whether the stop was supported by reasonable suspicion at the outset"; second, the court "determine[s] whether the manner in which the stop was conducted 'was reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Johnson*, 592 F.3d 442, 451 (3d Cir. 2010) (quoting *Terry*, 392 U.S. at 19–20). "To meet the reasonable suspicion standard, an officer needs only 'a minimal level of objective justification.'" *United States v. Foster*, 891 F.3d 93, 104 (3d Cir. 2018) (quoting *Wardlow*, 528 U.S. at 123). "In evaluating whether reasonable suspicion existed, a court 'must consider the totality of the circumstances, including the police officer's knowledge, experience, and common-sense judgments about human behavior.'" *United States v. Navedo*, 694 F.3d 463, 468 (3d Cir. 2012) (quoting *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002)). "Courts give considerable deference to police officers' determinations of reasonable suspicion." *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006); *see also* United States v. Wiggins, No. CR 21-926 (WJM), 2022 WL 10489467, at *2 (D.N.J. Oct. 18, 2022).

Here, the police reports provide that a few days before the Vehicle Stop, law enforcement officers found several items in the trash of the Irvington Premises that are typically used in the manufacture of narcotics pills: a respirator mask, latex gloves, and dry Swiffer pads with red residue. In addition, law enforcement recovered a Western Union receipt for a transfer of approximately $1,000 from Lee to an individual in China, where the narcotics-selling Website

operates. Lee owns the Irvington Premises. Immediately prior to the Vehicle Stop, officers observed Majerska and Lee leave the Irvington Premises, a location for which officers had a federal search warrant based on probable cause to believe it was a drug-involved premises, carrying a weighted bag (i.e., the Bag). Officers observed Majerska place the Bag into his car. The Court finds that the totality of the circumstances supports a finding that the law enforcement officers had reasonable suspicion that Majerska was engaged in criminal activity, specifically narcotics possession, at the time the traffic stop was initiated. Next, upon approaching Majerska's car, officers detected a strong odor of burnt marijuana emanating from Majerska's person and his vehicle.[6] "The smell of marijuana alone, if articulable and particularized, may establish not merely reasonable suspicion, but probable cause," *United States v. Washington*, No. 20-2970, 2022 WL 17336207, at *2 (3d Cir. Nov. 30, 2022) (quoting *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006) ("It is well settled that the smell of marijuana alone … may establish not merely reasonable suspicion, but probable cause.")). Further, upon removing Majerska from his vehicle, officers observed the Bag partially open. Inside the Bag, in plain view, officers observed numerous clear plastic bags containing multi-colored pills of suspected MDMA pills. Officers placed Majerska under arrest.

The observation of the suspected MDMA pills inside the Bag was justified by the "plain view" doctrine. "The plain view doctrine is grounded on the proposition that once police are lawfully in a position to observe an item first-hand, its owner's privacy interest in that item is lost; the owner may retain the incidents of title and possession but not privacy." *Illinois v. Andreas*, 463

---

[6] Marijuana was illegal in the State of New Jersey at the time of the Vehicle Stop. *See, e.g., Zanetich v. Wal-Mart Stores E., Inc*., No. 1:22-CV-05387, 2023 WL 3644813, at *3 (D.N.J. May 25, 2023) ("In November 2020, the recreational use of marijuana became legal in New Jersey by constitutional amendment, effective January 1, 2021…." (citing N.J. Const. Art. IV, § 7, ¶ 13)).

U.S. 765, 771–72, 103 S. Ct. 3319, 3324, 77 L.Ed.2d 1003 (1983). That doctrine permits officers to seize an item without a warrant if (1) they are at a lawful vantage point, (2) they see an item whose incriminating character is apparent without further investigation or manipulation, and (3) they have a lawful right of access to the item. *See United States v. Menon*, 24 F.3d 550, 559 (3d Cir. 1994) (citing *Horton v. California*, 496 U.S. 128, 141, 110 S. Ct. 2301, 2310, 110 L.Ed.2d 112 (1990)); *Arizona v. Hicks*, 480 U.S. 321, 107 S. Ct. 1149, 94 L.Ed.2d 347 (1987). Further, where an officer has probable cause to believe an automobile contains evidence of an offense, the so-called "automobile exception" permits a warrantless search of the vehicle. *See, e.g., Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L.Ed.2d 485 (2009); *United States v. Donahue,* 764 F.3d 293, 300 (3d Cir. 2014). Here, having seen the contraband, the officers had probable cause and were empowered to seize the suspected MDMA pills inside the Bag. *See United States v. Williams*, 413 F.3d 347, 353 (3d Cir. 2005) (probable cause established by observation of leafy green substance).

 Accordingly, Majerska's motion to suppress is denied.

    **B.**   <u>**Search Warrant For The Irvington Premises**</u>

Defendant Lee maintains the affidavit in support of the Search Warrant for the Irvington Premises does not provide a substantial basis for finding probable cause. Specifically, Lee claims, the search warrant affidavit neglected to mention that pill-making equipment can be used to make other legal products, like mints and candy; the purchases from China did not include controlled dangerous substances; that the intercepted communications contained no mention of drugs; and that the pull of Lee's garbage did not result "a trace of anything illegal." (ECF No. 81 at 6-9.)

Upon reviewing an affidavit and the resulting search warrant, an "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review." *Gates*, 462

U.S. at 236, 103 S.Ct. 2317. The probable cause determination of the judge issuing the search warrant "should be paid great deference by reviewing courts." *Id*. (quoting *Spinelli v. United States*, 393 U.S. 410, 419, 89 S. Ct. 584, 21 L.Ed.2d 637 (1969)). The standard of review for an issuing judge's probable cause determination is whether there is a "substantial basis" to conclude "a search would uncover evidence of wrongdoing," and "the Fourth Amendment requires no more." *Id.* (citing *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)). "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965) (citing *Jones*, 362 U.S. at 270, 80 S.Ct. 725). Accordingly, the Court applies a deferential substantial basis standard in reviewing the probable cause determination made by the Honorable Joseph A. Dickson, U.S.M.J. (ret.) ("Judge Dickson").

"[S]earch warrants are directed, not at persons, but at property where there is probable cause to believe that instrumentalities or evidence of crime will be found." *United States v. Conley*, 4 F.3d 1200, 1207 (3d Cir. 1993) (quoting *United States v. Tehfe*, 722 F.2d 1114, 1117–18 (3d Cir. 1983)). "Probable cause exists when, viewing the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Berry*, 132 F. App'x 957, 961 (3d Cir. 2005) (quoting *Gates*, 462 U.S. at 238, 103 S.Ct. 2317).

Here, the Irvington Premises Search Warrant affidavit contained sufficient details to establish probable cause. The affidavit detailed that Lee was in contact with the Website Operator via WhatsApp approximately 200 times between November 2019 and January 2020. During that same period, Lee received approximately a dozen packages to the Union Premises from China and

purchased kilogram-quantity amounts of different bonding agents. Ten days before the warrants were signed, law enforcement recovered evidence of narcotics manufacturing from the trash at the Irvington Premises: a respirator mask, latex gloves, and dry Swiffer pads with red residue. Officers also found a Western Union receipt for a money transfer from Lee to China in the trash. Seven days before the issuance of the warrants, a package was delivered to the Union Premises from a known reshippper for the Website, and the package was the same size and shape as one received one day earlier by the UC from the Website. Further, the facts that the trash pull did not yield evidence of illegal activity, or the packages from China did not contain controlled dangerous substances, do not undermine the Magistrate Judge's probable cause determination.

As noted by the Third Circuit, "direct evidence linking the residence to criminal activity is not required to establish probable cause." *United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002) (collecting cases). Overall, the information in the affidavit was enough to supply probable cause, but it also provided sufficient indicia that the Magistrate Judge's belief in probable cause was not "entirely unreasonable." *United States v. Leon,* 468 U.S. 897, 923, 926 (1984). Thus, the Court finds that the Irvington Premises Search Warrant was proper because it was issued by a neutral and detached Magistrate, and the agents' reliance on the respective search warrant was objectively reasonable.

The Court further finds that the record contains no evidence that law enforcement officers either knowingly or intentionally included misstatements or omitted facts from the affidavit when requesting the search warrants. Consequently, the Court will not conduct a *Franks* hearing. *See Pavulak* 700 F.3d at 665 (3d Cir. 2012). Although the pill-making equipment used by Lee could, in fact, be used for legal purposes such as making sweets and supplements, this does not overcome the basis provided for the search warrant. The officers requested the search warrant based on the

11

items found in the trash pull, their communication with the Website on WhatsApp, and their expertise and experience with drug transactions. As determined by the magistrate judge, it was reasonable for the officers to believe there was a high likelihood that the Defendants were engaging in illegal activities. (*See id.* at 2.)

In sum, Lee has not made a sufficient showing that the Irvington Premises Search Warrant lacked probable cause. Accordingly, the Court denies the request for a *Franks* hearing and the motion to suppress.

### III.   CONCLUSION

For the reasons set forth above, the motions to suppress filed by Defendant Majerska (ECF No. 78) and Defendant Lee (ECF No. 81) are **DENIED**. An appropriate Order accompanies this Opinion.

**DATED**: February 7, 2025

_____
HONORABLE JULIEN XAVIER NEALS
United States District Judge